THE VAN ARSDALE-OSBORNE BROKERAGE COMPANY, *Appellant,* v. W. L. D. MARTIN *et al., Appellees.*

No. 16,251.

SYLLABUS BY THE COURT.

COUNTERCLAIM AND SET-OFF—*Loss Sustained by Insured—Action on Note and Mortgage Given to Agent for Premium.* A promissory note executed to the general agents of an insurance company recited that it was given in payment of the premium on a policy of insurance against loss from hail to a crop of wheat, and contained a mortgage giving to the payees a lien on the wheat to secure the note. The mortgage provisions contained the following clause: "In case of loss under the above-named policy of insurance, the debt hereby secured shall at once become due, and shall be deducted from said loss." *Held,* that the rights of the parties under this clause were mutual, and in an action on the note the insured could offset against it the amount of loss under the policy.

Appeal from Pawnee district court; CHARLES E. LOBDELL, judge. Opinion filed January 8, 1910. Affirmed.

*E. L. Foulke, C. A. Matson,* and *George W. Finney,* for the appellant.

*G. Polk Cline,* for the appellees.

The opinion of the court was delivered by

PORTER, J.: Van Arsdale & Osborne are the general agents of the St. Paul Fire and Marine Insurance Company, and conduct their business under the partnership name of Van Arsdale & Osborne. There is also a company known as the Van Arsdale-Osborne Brokerage Company, incorporated under the laws of this state, to purchase notes given for insurance premiums. The brokerage company sued the appellees on the following written instrument:

"1299. No. 56,326.                    11-15-07.

"On the 15th day of September, 1907, for value received, I promise to pay to the order of Van Arsdale & Osborne, general agents, at their office in Wichita, Kan.,

the sum of $101.40 dollars, with 10 per cent interest after maturity.

"This note is given as premium for hail insurance on my crop of wheat, 320 acres in all, now growing on N. W. qr. of secs. 9-10, T. 21, R. 18, Pawnee county, Kansas.

"To secure the payment of the above debt hereinafter provided, I, or we, do hereby mortgage and convey to Van Arsdale & Osborne, or their assigns, the wheat above described, and if this note is not paid when due, or if any attempt shall be made to sell or remove said wheat, or any part thereof, before the payment of this note (permission, however, granted to sell not to exceed twenty-five per cent of the above crop for the purpose of paying this note, and harvesting expenses), said debt shall at once become due and payable without notice, and the legal holder thereof shall be entitled to the immediate possession of said wheat. In case of loss under the above-named policy of insurance, the debt hereby secured shall at once become due, and shall be deducted from said loss. This mortgage to be void in case of full compliance of all the terms and conditions thereof, otherwise to remain in full force and effect.

"Dated at Larned, this 26th day of June, 1907.

W. L. D. MARTIN.
J. W. BEER.

"P. O. Address, Larned, Pawnee county, Kansas.
"$101.40.
"No. 56,326. $101.40. Taken by J. W. Line. Maker, W. L. D. Martin. P. O. Larned, Kan."

The answer set up a failure of consideration, and alleged that in June, 1907, the defendants made application for a policy of insurance against loss by hail on 320 acres of wheat; that they made the application through one Jerry Line, local agent of the insurance company at Larned, and Van Arsdale & Osborne, general agents, authorized to take applications, issue policies and receive premiums; that the policy was to be delivered upon the execution and delivery of the note; that they executed and delivered the note sued on, but that no policy was ever executed or delivered. The answer further alleged that in the month of July, 1907,

the defendants sustained a loss of $200 to their wheat crop by hail, and that they immediately thereafter gave notice of the loss to the local agent of the insurance company, who made a pretense of arranging a settlement, but that no part of the loss had ever been paid. They therefore asked that their loss under the policy be offset against the note. There was a trial to the court, which resulted in a judgment in favor of the defendants for costs. The plaintiff appeals.

The evidence of the defendants tended to support the averments of the answer—that no policy had ever been received, that a loss occurred as alleged, and that the local agent of the company had been notified. The testimony of the plaintiff, on the contrary, tended to show that a policy of insurance had been issued and mailed to the defendants on the day the application was received and accepted by the general agents.

The plaintiff insists that none of the defenses to the note was sufficient, conceding that they were proved. It is first contended that the consideration of the note was not defeated by the failure to deliver the policy, because the written application provided that the applicant should be insured from the day the application was accepted and approved by the general agents; and it is argued that the defendants could maintain an action against the insurance company to recover any loss they may be entitled to, notwithstanding the policy was not delivered. In this we agree with the plaintiff. There was sufficient consideration for the note, and the defendants were insured against loss, whether the policy had been delivered or not.

A further contention is that Van Arsdale & Osborne merely advanced the money to the company for the premium, and in doing so they acted as the agents of the insured; that the insurance company never had any interest in, or ownership of, the note. It is argued that the situation is the same as though the defendants had given their note to a bank for money with

which to pay the premium. If it were necessary to decide that question we would be inclined to hold that where a note is given to the general agent of an insurance company in payment of premiums the insured deals with the company, and the agent of the company is not his agent for any purpose. It certainly could not be held that the failure of the agent to account to the company for the premium would defeat the insurance. The plaintiff insists that it is not in the insurance business; that the defendants must pay the note and look to the insurance company for any loss sustained under the policy. This might be the case if the note were an ordinary, negotiable promissory note and the plaintiff an innocent purchaser; but the note is not negotiable, and it contains terms and conditions to which we must look to determine the liability of the makers. The note and mortgage accompanying it constitute one entire contract. (*Muzzy v. Knight,* 8 Kan. 456; *National Bank v. Peck,* 8 Kan. 660.)

The principal controversy arises over the construction to be placed upon that provision of the contract which reads: "In case of loss under the above-named policy of insurance, the debt hereby secured shall at once become due, and shall be deducted from said loss." The question is whether this clause is a one-sided provision, solely for the benefit of the holder of the note, or whether it is reciprocal and authorizes the makers of the note to deduct from their loss the amount due on the note. The express provision is that the amount due on the note shall be deducted from the loss. But who shall make the deduction? The contract is silent as to this. The plaintiff claims that no one is authorized to make the deduction but the insurance company when it finally adjusts the loss, and that the whole purpose of the provision is to give the holder of the note security for its payment. But if the note belonged to the insurance company, and the amount of the loss was less than the amount of the note, the insured after the

loss had been adjusted certainly could satisfy the note by paying to the company the difference between the amount of the loss and the amount of the note. In that case the insured would make the deduction. If the note belonged to the insurance company, and the loss was greater than the amount of the note, the company when it adjusted the loss would deduct the amount of the note and pay the insured so much less. In that case the company would make the deduction. We have no hesitation in holding that the provision is mutual and reciprocal. It is only reasonable to assume that the makers of the note consented to the provision that if loss occurred the note should at once become due because they would have the proceeds of the loss to apply on the note. True, as the plaintiff contends, it is a brokerage company and not in the insurance business, but it purchased the note subject to all the conditions of the contract, of which the note was only a part.

The plaintiff relies upon the case of *Van Arsdale v. Edwards* [Okla. 1909], 101 Pac. 1123, holding the exact contrary. The court there held that Van Arsdale & Osborne, the general agents of the insurance company, were the agents of the insured for the purpose of advancing the premium, a proposition to which we can not assent. The contract was exactly like the one in this case, but the court construed the provision with respect to deducting the debt from the loss as a provision solely for the benefit of the holder of the note. Some importance seems to be attached to the fact that the provision in question is found in that part of the contract which is in the nature of a mortgage and which gives the holder of the note a lien to secure the debt. But the provision in a mortgage that the entire amount of the note shall at once become due in case of default in the payment of interest or taxes, though primarily inserted for the benefit of the mortgagee, can be turned to the advantage of the mortgagor and will start the statute of limitations in his favor. (*National Bank v. Peck*, 8 Kan. 660; *Snyder v. Miller*, 71 Kan. 410.)

In the opinion in the Oklahoma case the court starts with the proposition that, while the contract of insurance and the note sued upon grew out of the same transaction, they are not one and the same contract. This, in our opinion, makes no difference. It will, of course, be conceded that the contract of insurance is one thing and the note another. (*Insurance Co. v. Stone,* 61 Kan. 48.) But the contract of insurance is not the contract sued upon, nor is it involved in the action in any respect. Neither the plaintiff nor the defendants claim any rights under the contract of insurance. In seeking to offset their loss against the amount due on their note the defendants do not rely upon the contract of insurance. Although the contract of insurance and the contract sued upon are separate and independent contracts, the same is not true of the note and mortgage. They constitute one and the same contract, which is the contract sued upon, and this contract, as we construe it, contemplates that if loss occur under the policy of insurance the note shall at once become due, but the amount of such loss shall be deducted from the amount due on the note. In our view it makes no difference who is the holder of the note or how he acquired it; he takes it subject to all the conditions of the contract of which it is only a part. This does not make the holder of the note an insurer; it simply affects the amount of recovery, which, until the policy expires, is conditional.

The effect of the general finding in favor of the defendants is that their loss under the policy exceeded the amount due on the note, and therefore they were entitled to judgment.

The judgment is affirmed.